IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HANNAH CHANDLER,                          )
                                          )
               Plaintiff,                 )
                                          )
     v.                                   )          1:17CV172
                                          )
FORSYTH TECHNICAL COMMUNITY               )
COLLEGE, FORSYTH TECHNICAL                )
COMMUNITY COLLEGE BOARD OF                )
TRUSTEES, NANCY RAPP,                     )
individually and in her                   )
official capacity, WARREN                 )
HODGES, individually and in               )
his official capacity,                    )
JOE MCINTOSH, individually and            )
in his official capacity,                 )
CARLA CREWS, individually and             )
in her official capacity,                 )
DEANA RAY, individually and in            )
her official capacity, and                )
CONLEY WINEBARGER, individually           )
and in his official capacity,             )
                                          )
               Defendants.                )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Hannah Chandler ("Plaintiff"), proceeding <u>pro se</u>,

commenced this action by filing a Complaint in the United States

District Court for the Middle District of North Carolina against

Defendants Forsyth Technical Community College ("FTCC"), FTCC

Board of Trustees, Nancy Rapp, Warren Hodges, Joe McIntosh,

Carla Crews, Deana Ray,[1] and Conley Winebarger in their

individual and official capacities (collectively "Defendants").

(Complaint ("Compl.") (Doc. 1).)

This matter comes before the court on Defendants' Motion to

Dismiss. (Doc. 6.) Plaintiff has responded, (Doc. 12), and

Defendants have replied, (Doc. 14). This matter is now ripe for

resolution. For the reasons stated herein, this court will grant

Defendants' motion.

Plaintiff has also filed an Emergency Motion for Expedited

Ruling on Defendants' 12(b)(6) Motion to Dismiss (Doc. 15) and a

Motion to Set a Trial Date (Doc. 18). This court will deny both

of these motions as moot.

## I.  BACKGROUND

### A.  Previous Litigation

The present case arises from the same dispute and

underlying facts addressed by this court in Chandler v. Forsyth

---

[1] The Complaint does not specify whether Defendant Deana Ray is sued in her individual or official capacity. (Complaint ("Compl.") (Doc. 1) at 1.) Because Plaintiff is proceeding pro se, the court liberally construes the Complaint and assumes that Plaintiff intended to sue Ray in both capacities, as she did each of the other individual defendants. See Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995); Cobb v. Rector & Visitors of Univ. of Va., 69 F. Supp. 2d 815, 824 & n.12 (W.D. Va. 1999); Jacobs v. Coll. of William & Mary, 495 F. Supp. 183, 188 & n.6 (E.D. Va. 1980).

Technical Community College ("Chandler I"), No. 1:15CV337, 2016 WL 4435227 (M.D.N.C. Aug. 19, 2016). These underlying facts are extensively outlined in this court's prior opinion. See id. at *1-4. Plaintiff was a student at FTCC, where she was enrolled in Legal Research and Writing I, taught by Defendant Nancy Rapp ("Defendant Rapp"), in the fall of 2014. Id. at *1. The claims in Chandler I arose from an interaction between Plaintiff and Defendant Rapp on November 5, 2014, and the subsequent response by FTCC and its employees. Id.

In Chandler I, Plaintiff alleged (1) First Amendment violations; (2) discrimination; (3) Sixth Amendment violations; (4) right to privacy violations in contravention of the Family Educational Rights and Privacy Act ("FERPA") and Health Insurance Portability and Accountability Act ("HIPPA"); (5) falsification of government records; (6) defamation; (7) equal protection violations; (8) conspiracy; (9) violation of N.C. Gen. Stat. § 115C-407.15; and (10) that Defendants' conduct caused her "humiliation, mental stress and anguish, delayed graduation, delayed earnings, reduction in earnings, reduction of retirement benefits, and loss of educational and employment opportunities." Id. at *4.

In Chandler I, individual Defendants asserted qualified immunity for each of the claims against them in their individual capacities. Id. at *6. This court accordingly considered each claim to determine: first, whether Plaintiff properly alleged a constitutional violation; and second, if a violation was properly alleged, whether the right was clearly established. Id. at *6-7 (citing Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007)). In considering Plaintiff's pro se claims, this court engaged in a generous review of the Complaint, construing each claim liberally and taking care to discern Plaintiff's genuine concern behind each claim. See Id. at *5-24; see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Boag v. MacDougall, 454 U.S. 364, 365 (1982) (requiring liberal construction of pro se filings). After said review, this court determined that each constitutional violation alleged in Chandler I was insufficiently pled and proceeded no further into the analysis. See Chandler I, 2016 WL 4435227, at *7–25. Consequently, the case was dismissed as to all Defendants.

**B.    The Instant Litigation**

The case currently before the court is distinguishable from Chandler I in that (1) several Defendants named in the Chandler I Complaint were omitted in the present case; (2) Defendant

-4-

Conley Winebarger ("Defendant Winebarger") and Defendant FTCC Board of Trustees, who were not named as Defendants in <u>Chandler I</u>, were named as Defendants in the present case; and (3) Plaintiff raises different claims in the present case. (<u>Compare</u> Complaint ("<u>Chandler I</u> Compl.") 1:15CV337 (Doc. 2) ¶¶ 67–89, <u>Chandler I</u>, 2016 WL 4435227, <u>with</u> Complaint ("Compl.") 1:17CV172 (Doc. 1) ¶¶ 96–130.)

As to the specific counts in the Complaint in the instant case, Plaintiff alleges the following:

In Count I, Plaintiff alleges that Defendants violated her procedural and substantive due process rights guaranteed under the Fourteenth Amendment to the U.S. Constitution and violated Art. I, §§ 1 and 5 of the North Carolina Constitution. (Compl. (Doc. 1) ¶¶ 96–102.)

In Count II, Plaintiff alleges that individual Defendants in their personal capacities violated the above-cited federal and state constitutional provisions and are liable under 42 U.S.C. § 1983. (<u>Id.</u> ¶¶ 103–08.)

In Count III, Plaintiff alleges that Defendants breached a contract to which she was a party, specifically Forsyth Tech's

-5-

policies and procedures as outlined in the Student Academic
Planner and Handbook. (Id. ¶¶ 109–18.)[2]

In Count IV, Plaintiff alleges that individual Defendants
in their personal capacities violated the Due Process Clause of
the Fourteenth Amendment. (Id. ¶¶ 119–23.)

In Count V, Plaintiff alleges that Defendants FTCC and the
FTCC Board of Trustees breached the same contract mentioned
above, that is, Forsyth Tech's policies and procedures as
outlined in the Student Academic Planner and Handbook. (Id.
¶¶ 124–30.)

## II.   **LEGAL STANDARD**

Filings by pro se litigants are entitled to liberal
construction. Erickson, 551 U.S. at 94; Boag, 454 U.S. at 365.
This standard is generous, as courts "impose on pro se litigants
— even those who may be cantankerous or make extraneous and
inappropriate assertions against their opponents or the court —
'less stringent standards . . . .'" Sinclair v. Mobile 360,
Inc., 417 F. App'x. 235, 243 (4th Cir. 2011) (citation omitted).
Further, when employing this liberal construction, "where 'the
context . . . makes clear a litigant's essential grievance, the

---

[2] The Complaint labels two counts as "Count II." (See Compl.
(Doc. 1) at 25, 27.) Consequently, the numbering of claims in
this Memorandum Opinion and Order differs from the Complaint.

complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern.'" Id. (citation omitted). But see Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not, however, without limits. . . . [They do] not require . . . courts to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments . . . .").

With the principles governing construction of pro se complaints in mind, this court will review Defendants' Motion to Dismiss (Doc. 6). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S.

at 556). A court must accept a complaint's factual allegations as true when ruling on a Rule 12(b)(6) motion. Id. Further, the complaint is liberally construed, with all reasonable inferences drawn in the plaintiff's favor. See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

Nevertheless, sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 555, 570 (citation omitted); see Iqbal, 556 U.S. at 680-81. A court "cannot ignore a clear failure in the pleadings to allege any facts which set forth a claim." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

## III. **ANALYSIS**

### A. **Jurisdiction**

As in Chandler I, the present case is properly before this court pursuant to 28 U.S.C. § 1331 federal-question jurisdiction with respect to Plaintiff's federal law claims and corresponding supplemental jurisdiction with respect to her state common law claims. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); Chandler I, 2016 WL 4435227, at *6.

### B. **Defenses**

In support of their Motion to Dismiss, Defendants assert that (1) the claims contained in the present Complaint are barred by res judicata; and alternatively, (2) that the Complaint fails to state claims for which relief may be grated. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. 7) at 3.) The court's analysis will begin with considering whether each claim is barred by res judicata. Only those claims not barred by res judicata will be reviewed for failure to state a claim.

### C. **Res Judicata**

Defendants assert that the present action is barred by res judicata and subject to dismissal because there is (1) a previous judgment on the merits in Chandler I; (2) an identity

of the causes of action in <u>Chandler I</u> and the present case; and

(3) an identity of parties in the two suits. (<u>Id.</u> at 4.)

Plaintiff responds, arguing that res judicata is

inapplicable and should not bar the present claims because (1)

this court's opinion in <u>Chandler I</u> was not a final judgment on

the merits; (2) there remain disputed issues of fact; (3) she

did not have a full and fair opportunity to litigate <u>Chandler I</u>;

and (4) she suffered "multiple wrongs at the hands of the

Defendants," and is therefore permitted to bring the present

action despite the similarities to <u>Chandler I</u>. (Pl's. Mem. of

Law in Opp'n to Defs.' Mot. to Dismiss ("Pl's. Mem.") (Doc. 13)

at 5-8.)

As a preliminary matter, the court notes that, because both

<u>Chandler I</u> and the present case are federal-question cases, the

preclusive effect of the earlier judgment will be determined by

the federal common law as opposed to the law of the state in

which this court sits. See <u>Taylor v. Sturgell</u>, 553 U.S. 880, 890

& n.4 (2008).

The Fourth Circuit has outlined the rationale behind the res

judicata doctrine as well as the applicable standard in federal-

question cases:

> Under the doctrine of <u>res judicata</u>, or claim
> preclusion, "[a] final judgment on the merits of an

action precludes the parties or their privies from
relitigating issues that were or could have
been raised in that action." By precluding parties in a
subsequent proceeding from raising claims that were or
could have been raised in a prior proceeding, "[r]es
judicata . . . encourages reliance on judicial
decisions, bars vexatious litigation, and frees the
courts to resolve other disputes."

    For the doctrine of res judicata to be
applicable, there must be: (1) a final judgment on the
merits in a prior suit; (2) an identity of the cause
of action in both the earlier and the later suit; and
(3) an identity of parties or their privies in the two
suits.

Pueschel v. United States, 369 F.3d 345, 354–55 (4th Cir. 2004)

(citations omitted); see also Meekins v. United Transp. Union,

946 F.2d 1054, 1057 (4th Cir 1991).

    Along with these "three formal elements" of res
judicata, "two practical considerations should be
taken into account." First, we consider whether the
party or its privy knew or should have known of its
claims at the time of the first action. Second, we ask
whether the court that ruled in the first suit was an
effective forum to litigate the relevant claims.

Providence Hall Assocs. v. Wells Fargo Bank, N.A., 816 F.3d 273,

276-77 (4th Cir. 2016) (considering the "three core res judicata

requirements in turn, followed by the two 'practical

considerations'") (citations omitted).

### 1.    Judicial Notice of Chandler I Proceeding

Defendants quote Andrews v. Daw, 201 F.3d 521, 524 & n.1

(4th Cir. 2000) to argue that "a court may take judicial notice

of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact[,]" seemingly to suggest that the court do so in the present case. (Defs.' Mem. (Doc. 7) at 6.) Plaintiff responds that disputed issues of fact remain and judicial notice of the Chandler I proceedings would be inappropriate. (Pl's Mem. (Doc. 13) at 7.)[3]

The court declines to take judicial notice of any facts for the following reasons. First, Chandler I was disposed of at the motion to dismiss stage, meaning that the court reviewed the sufficiency of the Complaint and did not engage in any fact finding. Second, the present motion is likewise a motion to dismiss, which does not involve or require any fact finding or weighing. Consequently, the court declines to further address either party's arguments with respect to judicial notice of the Chandler I proceeding.

---

[3] In making this argument, Plaintiff also suggests that the Motion to Dismiss should be denied because disputed issues of fact remain. (Pl's Mem. (Doc. 13) at 7.) Because courts at the motion to dismiss stage consider the sufficiency of the pleadings and accept all facts alleged in the complaint as true, this argument is without merit. See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F. 3d 435, 440 (4th Cir. 2011).

## 2. **Final Judgment on the Merits in Prior Suit**

Plaintiff contends that this court's opinion in Chandler I was not a final adjudication on the merits. (Id. at 5–7.) Specifically, Plaintiff asserts that because Chandler I was disposed of on a Rule 12(c) motion to dismiss – which only determined the sufficiency of the pleadings rather than looking to the merits of her case – it should not be considered a final judgment on the merits. (Id. at 6.) Plaintiff quotes Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (citation omitted), which states in part: "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." (Pl's. Mem. (Doc. 13) at 6.)

Plaintiff's argument is without merit. As Defendants correctly point out, this quoted language from Massey comes from a portion of the opinion describing the appellate standard of review for Rule 12(c) motions and is not on point as to the issue presently before the court. Instead, Federal Rule of Civil Procedure 41(b), the controlling authority on this question, provides that "[u]nless the dismissal order states otherwise," an involuntary dismissal "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 []

operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). This includes judgments on the pleadings pursuant to Rule 12(c). 5C Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1372 (3d ed. 2017) ("A grant of a motion under Federal Rule 12(c) for judgment on the pleadings constitutes a final judgment on the merits of the controversy within the meaning of Rule 54."); see Kelly v. United States, 809 F. Supp. 2d 429, 433 & n.2 (E.D.N.C. 2011). Consequently, the first prong of the res judicata analysis, a final judgment on the merits, is established.

### 3.    Identity of the Cause of Action in Both Suits

Plaintiff asserts that she "suffered multiple wrongs at the hands of the Defendants and is permitted to bring this present action despite the similarities to Chandler I[.]" (Pl's. Mem. (Doc. 13) at 7–8.) In support of this assertion, Plaintiff cites to Federal National Mortgage Ass'n v. Quicksilver LLC, 155 F. Supp. 3d 538, 549 (M.D.N.C. 2015) (quoting Tong v. Dunn, 231 N.C. App. 491, 500, 752 S.E.2d 669, 675 (2013)), which states in relevant part, "[w]here a plaintiff has suffered multiple wrongs at the hands of a defendant, a plaintiff may normally bring successive actions, or, at his option, may join several claims together in one lawsuit." (Pl's. Mem. (Doc. 13) at 8.)

Plaintiff's argument is without merit for two reasons. First, the cited case considered res judicata in a diversity case, and thus relied on state law, rendering it inapplicable to this case. Quicksilver, 155 F. Supp. 3d at 542-44, 548. Second, as a general matter, this quotation and the cases underlying it speak to instances of "multiple wrongs," unlike the single wrong at issue in this case. Here, as discussed below, Plaintiff's claims arise from a single alleged wrong – that is, the events of November 5, 2014, and FTCC and its employees' subsequent response thereto.

Defendants, on the other hand, assert that although the present case alleges contract and due process claims which were not asserted in Chandler I, the present claims are barred by res judicata nonetheless because they could have been raised in Chandler I. (Defs.' Mem. (Doc. 7) at 8.) Defendants contend that the Fourth Circuit employs the transactional approach to determine whether there is identity between the causes of action in the two suits, and argues that this standard has been met here. (Id.)

Defendants are correct that, in considering the second prong of the res judicata analysis, the Fourth Circuit "follow[s] the 'transactional approach' . . . meaning that 'res

judicata will bar a "newly articulated claim[]" if it is based on the same underlying transaction [involved in the first suit] and could have been brought in the earlier action.'" <u>Providence Hall</u>, 816 F.3d at 282 (citation omitted).

Here, the dispute underlying the claims in the present case arose out of the same occurrence as Plaintiff's claims in <u>Chandler I</u>: the events of November 5, 2014, and FTCC and its employees' subsequent response. (Compare <u>Chandler I</u> Compl. 1:15CV337 (Doc. 2) ¶¶ 1-66, <u>Chandler I</u>, 2016 WL 4435227, <u>with</u> Compl. 1:17CV172 (Doc. 1) ¶¶ 35-95.) Although the Complaint in the present case includes more in-depth facts than that in <u>Chandler I</u>, Plaintiff challenges the legality of these same events in both lawsuits. Plaintiff has not pointed to any reason why the present claims could not have been brought in the earlier action. Consequently, the second prong of the res judicata analysis is established.

### 4.   Identity of Parties

With the exception of Defendant FTCC Board of Trustees and Defendant Winebarger, all other Defendants named in the present case were also named in <u>Chandler I</u>. (Compare <u>Chandler I</u> Compl. 1:15CV337 (Doc. 2) at 2-4, <u>Chandler I</u>, 2016 WL 4435227, <u>with</u> Compl. 1:17CV152 (Doc. 1) ¶¶ 17-28.) These new parties are

considered in turn to determine whether the third prong of the res judicata analysis is established nonetheless.

### (a)   Defendant FTCC Board of Trustees

Plaintiff claims that Defendant FTCC Board of Trustees "oversees the activities of [FTCC] and its teachers and administrators" and is thus responsible for the alleged violations of law. (See Compl. (Doc. 1) ¶¶ 19, 96-102.) Defendants contend that, although the FTCC Board of Trustees was not named as a Defendant in Chandler I, FTCC was. (Defs.' Mem. (Doc. 7) at 11.) Because "the Board is FTCC," Defendants argue, there is an identity of parties. (Id.) In Alvarado v. Board of Trustees of Montgomery Community College, the Fourth Circuit considered whether an administrative complaint that named a community college as a defendant could be maintained against the board of the community college. 848 F.2d 457, 460 (4th Cir. 1988). In answering this question in the affirmative, the court reasoned:

> An examination of the Maryland statutes creating Montgomery Community College and conferring powers and duties on the college's board of trustees clearly reveals that the board of trustees is identical with the college itself for purposes of suits such as that brought by Alvarado. Maryland has by statute created boards of trustees and empowered them to establish and operate community colleges. See Md. Educ. Code Ann. § 16-203 (1985). Maryland has specifically created the Board of Trustees of Montgomery Community College. See

-17-

> id. § 16-510. Another section of the statute, dealing
> with labor relations, defines "Public employer" as
> "the Board of Trustees of Montgomery Community
> College." Id. § 16-510.1(a)(15). The statute
> specifies: "Each board of trustees may sue and be
> sued." Id. § 16-203(k). No such provision is included
> in the statutes to empower the college itself to sue
> or be sued. Once he retained counsel to bring his
> lawsuit against the college, Alvarado properly filed
> suit against the board of trustees, in accordance with
> § 16-203(k).

Id. (emphasis added).

Embarking on a similar line of reasoning, Defendants point
to N.C. Gen. Stat. § 115D-20, which outlines the powers and
duties of North Carolina community college trustees. (Defs.'
Mem. (Doc. 7) at 11.) These statutory powers include but are not
limited to the election of officers, employment of personnel,
adoption of rules for the operation of the institution and
discipline of students, the power to enter into loans, and the
ability to enter into contracts. § 115D-20. Additionally, and
more pertinently, § 115D-14 provides:

> The board of trustees of each institution shall
> be a body corporate with powers to enable it to
> acquire, hold, and transfer real and personal
> property, to enter into contracts, to institute and
> defend legal actions and suits, and to exercise such
> other rights and privileges as may be necessary for
> the management and administration of the institution
> in accordance with the provisions and purposes of this
> Chapter. The official title of each board shall be
> "The Trustees of .........." (filling in the name of
> the institution) and such title shall be the official
> corporate name of the institution.

§ 115D-14 (emphasis added). Under North Carolina law, a community college necessarily acts through the board. This statutory language makes apparent that the board of trustees – having the power to hold and transfer property, contract, sue, and be sued – shares an identity with the community college itself. That the college and the board are a single entity is further evidenced by a straightforward application of § 115D-14, which makes clear that "The Trustees of [Forsyth Technical Community College]" is "the official corporate name of the institution." See id. Consequently, the court concludes that FTCC and the FTCC Board of Trustees share an identity for purposes of res judicata, and the third prong of the res judicata analysis is satisfied.

Taking into account the two final practical considerations, this court notes, first, that Plaintiff certainly knew about claims she might bring against Defendant FTCC Board of Trustees at the time of Chandler I, as evidenced by her naming the college in her first Complaint. See Providence Hall, 816 F.3d at 277. Second, there is no reason to believe that this court in Chandler I was an ineffective forum to litigate the claims in question. See id. Accordingly, Defendants' motion to dismiss the

present suit will be granted with respect to Defendant FTCC Board of Trustees.

### (b) **Defendant Winebarger**

Plaintiff, in the present Complaint, alleges that Defendant Winebarger, the Vice President of Instructional Services at FTCC, instructed other Defendants to not give Plaintiff a hearing after she was promised one. (Compl. (Doc. 1) ¶¶ 8, 24, 83.) Defendants contend that, although Defendant Winebarger was not named as a Defendant in <u>Chandler I</u>, this is inconsequential because Winebarger was subpoenaed for a deposition in <u>Chandler I</u> and Plaintiff "told the Defendants that she intended to add him as a defendant in <u>Chandler I</u>." (Defs.' Mem. (Doc. 7) at 11.) According to Defendants, employment relationships such as that between Defendant Winebarger and FTCC place said employee in privity with the employer for res judicata purposes. (<u>Id.</u>) This question is a bit more nuanced than Defendants' argument suggests.

"To be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he <u>represents precisely the same legal right in respect to the subject matter involved</u>.'" <u>Martin v. Am. Bancorporation Ret. Plan</u>, 407 F.3d 643, 651 (4th Cir. 2005)

(emphasis added) (citation omitted). Defendant Winebarger is

named in the present case, however, in both his official and

individual capacities and therefore represents two distinct

legal rights. (Compl. (Doc. 1) at 1.)

The Fourth Circuit has elaborated on the distinctions between

the two capacities in which an individual may be sued:

> While "[p]ersonal capacity suits seek to impose
> personal liability upon a government official for
> actions he takes under color of state law," official-
> capacity suits "generally represent only another way
> of pleading an action against an entity of which an
> officer is an agent" and in essence are "suit[s]
> against the entity." Because the real party in
> interest in an official-capacity suit is the entity, a
> plaintiff can only recover damages from the entity
> itself, in contrast to a personal-capacity suit, in
> which a plaintiff can seek a judgment against the
> official's personal assets. Furthermore, different
> legal theories of liability are required for the
> plaintiff, and different defenses are available to the
> defendant, in a personal-capacity action than in an
> official-capacity action. These differences indicate
> that a government official in his official capacity
> does not represent "precisely the same legal right" as
> he does in his individual capacity.

Andrews, 201 F.3d at 525 (emphasis added) (quoting Kentucky v.

Graham, 473 U.S. 159, 165-67 (1985)).

As a general matter, for res judicata purposes, "public

employees sued in their individual capacities are not in privity

with their employers" whereas public officials sued in their

official capacities are. Price v. Town of Atl. Beach, Civil

Action No. 4:12-cv-02329-MGL, 2013 WL 5945728, at *3 & n.2 (D.S.C. 2013) (citation omitted); see Conner v. Reinhard, 847 F.2d 384, 394 (7th Cir. 1988) ("[A] city official sued in his official capacity is generally in privity with the municipality."); 18A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure: Jurisdiction § 4458 (2d ed. 2017) ("The relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity. Thus a judgment against a government or one government official does not bind a different official in subsequent litigation that asserts a personal liability against the official[.]"); cf. Andrews, 201 F.3d at 526 (holding "that a government employee in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata"). Here, privity exists with respect to the suit against Defendant Winebarger in his official capacity but not his individual capacity. Consequently, res judicata will bar the suit against Defendant Winebarger in his official capacity, but will leave intact the suit against him in his individual capacity.

### 5.  **Failure to State a Claim**

Because Plaintiff's present Complaint as to Defendant FTCC Board of Trustees and Defendant Winebarger in his official capacity are barred by res judicata and will therefore be dismissed, this court will only consider Defendants' arguments in the alternative for failure to state a claim with respect to Defendant Winebarger in his personal capacity.

Of the five counts in the present Complaint, the first four are alleged against Defendant Winebarger in his personal capacity. (Compl. (Doc. 1) at 24–31.) Counts One, Two, and Four are duplicative in that they each allege violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, §§ 1 and 5 of the North Carolina Constitution. (Id.) Count Three alleges a separate breach of contract claim. (Id.) Consequently, the due process claims contained in Counts One, Two, and Four will be considered together.

### (a)  **Due Process Violations**

Plaintiff alleges that Defendants violated her due process rights guaranteed under both the U.S. Constitution and the North Carolina Constitution by (1) removing her from class without justification; (2) failing to notify her of oncoming

disciplinary actions; (3) denying her the right to "face her accuser"; (4) barring her from campus and classes; (5) determining her punishment prior to a hearing; (6) and failing to provide her an impartial hearing. (Id. ¶ 102.) Considering the same underlying dispute alleged in the present Complaint, this court, in Chandler I, addressed the legal framework surrounding "the due process claims inherent in Plaintiff's pro se Complaint." Chandler I, 2016 WL 4435227, at *11. This court found that Plaintiff had not alleged that she was deprived of a protectable property right and dismissed her due process claim. Id. In considering Plaintiff's argument, this court acknowledged that "[t]he Supreme Court has assumed, without actually deciding, that university students possess a 'constitutionally protectable property right' in their continued enrollment in a university." Id. at *11 (citing Tigrett v. Rector and Visitors of Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002)). Because Plaintiff did not allege in Chandler I that her enrollment at FTCC was terminated, this assumed-but-not-decided right was not implicated and Plaintiff's claim was dismissed. Id.

In an attempt to remedy this deficiency, Plaintiff's Complaint in the present case alleges more extensive facts

surrounding her claim that she was barred from class until she met certain conditions. (See, e.g., Compl. (Doc. 1) ¶ 2.) Specifically, Plaintiff claims that she was not allowed to return to class unless she attended a meeting, (id. ¶ 5), and completed counseling, (id. ¶¶ 10, 81-84). Plaintiff states that, because she believed that Defendants intended to expel her, she made the decision to drop all of her classes. (Id. ¶¶ 88-91.) Plaintiff never alleges, however, that she was expelled from FTCC.

Because Plaintiff has not alleged that she was expelled from FTCC, she has not claimed that she was deprived of a protected interest in liberty or property as is necessary to state a due process claim. See Tigrett, 290 F.3d at 628. Furthermore, Plaintiff's subjective belief that Defendants intended to expel her is not relevant in this analysis. "Whether a deprivation of constitutional rights has occurred is not dependent upon the subjective feelings or beliefs of a plaintiff. In order to properly maintain a due process claim, a plaintiff must have been, in fact, deprived of a constitutionally protected liberty or property interest." Id. Plaintiff has not identified such an interest.

Furthermore, in Chandler I, this court also considered whether Plaintiff's "alleged reliance on published school procedures in the area of academic discipline" implicated due process principles. Chandler I, 2016 WL 4435227, at *12. Considering whether due process applied, and if so, what level of procedure Plaintiff was entitled to, this court surveyed the case law on due process rights in the school discipline context. Id. at *12-14 (citing Goss v. Lopez, 419 U.S. 565, 583 (1975) (considering a short-term public school suspension and stating that notice and informal hearings would "provide a meaningful hedge against erroneous action"); Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 74 (4th Cir. 1983) (stating that "[i]n the academic setting particularly, the Supreme Court has recognized that the requirements of due process may be satisfied by something less than a trial-like proceeding" because schools need to "have greater flexibility in fulfilling the dictates of due process than a court"); Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686 (1986) (recognizing that, in the lower schools context, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes

criminal sanctions"); <u>Wofford v. Evans</u>, 390 F.3d 318, 323 (4th Cir. 2004) (stating, again in the lower schools context, that school officials have substantial leeway due to the "'substantial interest of teachers and administrators in maintaining discipline in the classroom.' Educators must be able to respond effectively to the disciplinary exigencies of the moment" (citation omitted)); <u>Bd. of Curators of Univ. of Mo. v. Horowitz</u>, 435 U.S. 78, 89-90 (1978) (distinguishing school disciplinary proceedings from academic evaluations and stating that "the academic judgment of school officials . . . is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision"); <u>Clark v. Whiting</u>, 607 F.2d 634, 644 (4th Cir. 1979) (stating, in the university context, that "[t]he educational process is not by nature adversary; instead it centers around a continuing relationship between faculty and students, 'one in which the teacher must occupy many roles — educator, advisor, friend, and, at times, parent-substitute.' This is especially true as one advances through the varying regimes of the educational system, and the instruction becomes both more individualized and more specialized" (citation omitted)); <u>Heenan v. Rhodes</u>, 757 F. Supp. 2d 1229, 1243 (M.D. Ala. 2010) (holding that "there is no right

to an attorney in school disciplinary proceedings, and the law imposes only basic procedural obligations upon the teachers and administrators who operate academic hearings")). Assuming Plaintiff had a protectable liberty or property interest, this court in Chandler I concluded that the procedural protections Plaintiff received were sufficient. Chandler I, 2016 WL 4435227, at *14 (citing Lewin v. Med. Coll. of Hampton Roads, 910 F. Supp. 1161, 1164-67 (E.D. Va. 1996)).

Construing the present Complaint with these same principles in mind, this court again considers whether Plaintiff's alleged reliance on published school procedures entitled her to heightened procedure. In the instant case, Plaintiff has not alleged that she was expelled from FTCC. Rather, Plaintiff has alleged that she was required to attend a meeting and counseling. (Compl. (Doc. 1) ¶¶ 5, 10, 81, 84.) Furthermore, Plaintiff met with FTCC administration to discuss her views on the issue. (Id. ¶ 5.) The decided-upon punishment was of the low-range type intended to facilitate academic progress. Assuming that Plaintiff had a protectable liberty or property interest in the FTCC disciplinary proceedings and taking reasonable inferences in her favor, this court again concludes that the procedural protections Plaintiff was afforded were

sufficient. Because Plaintiff has not sufficiently alleged that any deprivation she experienced entitled her to increased procedural protections, her due process claim against Defendant Winebarger in his personal capacity will be dismissed.

**(b)  Breach of Contract**

Finally, Plaintiff alleges that FTCC's policies and procedures as outlined in the Student Academic Planner and Handbook constitute a "binding agreement between [] Defendants and each Forsyth Tech student." (Id. ¶ 110.) Plaintiff contends that Defendants did not follow the disciplinary procedures outlined in this contract and in doing so, breached the contract. (Id. ¶¶ 111–118.)

This court has pendant jurisdiction over this state law claim. See Gibbs, 383 U.S. at 725. "In federal question cases with supplemental state law claims, the court applies the forum state's choice of law analysis absent an 'overwhelming federal policy [that] requires [the court] to formulate a choice of law rule as a matter of independent federal judgment.'" Mitchell v. HCL Am., Inc., 190 F. Supp. 3d 477, 487 (E.D.N.C. 2016) (quoting Compliance Marine, Inc. v. Campbell, 839 F.2d 203, 206 (4th Cir. 1988)).

> Under North Carolina law "matters affecting the substantial rights of the parties are determined by

lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." As applied to contracts, questions bearing on the parties' mutual assent are procedural issues; thus, their answers are fixed by North Carolina law. By contrast, where the court must "interpret, construe, or otherwise determine the validity" of an agreement, those inquiries are substantive and require analysis under the law of the claim's situs.

In North Carolina, the "situs" of a contract claim usually is "the state where the last act to make a binding contract occurred."

Id. at 488 (citations omitted). Plaintiff's claim presents threshold questions of mutual assent and contract formation, that is, whether FTCC's policies and procedures as outlined in the Student Academic Planner and Handbook constitute a contract between Plaintiff and Defendants. North Carolina contract law, the law of the forum, will therefore govern this inquiry.

In Giuliani v. Duke University, No. 1:08CV502, 2010 WL 1292321, at *7 (M.D.N.C. Mar. 30, 2010), this court considered whether certain university "policy manuals" were binding contracts between a student and the university and outlined the state of North Carolina law on this issue.

At the time of the Giuliani decision, the Supreme Court of North Carolina had not directly addressed the question of what terms or publications constitute an enforceable contract between a student and a university under North Carolina law. Id.

However, the North Carolina Court of Appeals, in Ryan v. University of North Carolina Hospitals, had considered a claim brought by a medical resident and hospital employee with a written employment contract that required the University to provide a training program that complied with the policies of the Accreditation Council for Graduate Medical Education Residency Review Committee. 128 N.C. App. 300, 301, 494 S.E.2d 789, 790 (1998). The Ryan court permitted a narrow claim to move forward, which alleged a specific, identifiable provision (an ob/gyn rotation) of the contract that the University failed to provide. Id. at 302, 494 S.E.2d at 791. Rather than holding that all educational handbooks are enforceable contracts, the Ryan court simply permitted an action to proceed based on an identifiable contractual provision specifically incorporated into an agreement that addressed both employment and medical residency. Because the Giuliani plaintiff did not allege the existence of a contract specifically incorporating the student handbooks or their terms, this court concluded that Ryan was inapplicable. Giuliani, 2010 WL 1292321, at *7.

Next, this court looked to Mercer v. Duke University, a case decided after Ryan, which addressed the issue of whether student handbooks are "part of the contract between the school

and [the plaintiff] under North Carolina law." Id. at *8 (citing Mercer v. Duke Univ., No. 1:97CV959, slip op. at 14 (M.D.N.C. Sept. 28, 2000)). In Mercer, the plaintiff did not present a contract that specifically incorporated the terms of the student handbook. Mercer, slip op. at 14. The Mercer court "recognized 'that a student can bring an action for breach of contract arising from a dispute related to an "educational contract."'" Id. at 13 (citing Ryan, 128 N.C. App. at 301, 494 S.E.2d at 790-91). The Mercer court went on to address the issue that was not decided in Ryan — whether university publications are part of the contract between the university and a student under North Carolina law. Id. at 14. Referencing North Carolina law governing whether employee handbooks are part of a contract between an employer and an employee, the Mercer court found such handbooks to only be part of the employer-employee contract when they are explicitly included by reference therein. Id. at 14-15 (citing Black v. Western Carolina Univ., 109 N.C. App. 209, 213, 426 S.E.2d 733, 736 (1993)). Accordingly, the Mercer court found that a student's contract claim based on terms contained in a student handbook that have not been explicitly included or incorporated into a contract must be dismissed. Id. at 15; see

also <u>Love v. Duke Univ.</u>, 776 F. Supp. 1070, 1075 (M.D.N.C. 1991) (arriving at the same conclusion).

This court, in <u>Giuliani</u>, likewise concluded that because the plaintiff produced a handbook and a policy manual, but not a contract that specifically incorporated those documents, that a contract did not exist under North Carolina law. <u>Giuliani</u>, 2010 WL 1292321, at *8. Because where there was no legally enforceable contract there could be no breach, this court dismissed the <u>Giuliani</u> plaintiff's claim. <u>Id.</u>

This line of reasoning was neither adopted nor disturbed by the North Carolina Court of Appeals in 2013 when it was poised to determine whether a student "bulletin" that outlined undergraduate student behavior standards and procedures constituted an enforceable contract. <u>See</u> <u>Samost v. Duke Univ.</u>, 226 N.C. App. 514, 518–20, 742 S.E.2d 257, 260–61 (2013) ("Assuming, without in any way deciding, that the Bulletin created a valid contract between Plaintiffs and Defendant, we do not believe that these allegations adequately allege a breach of the parties' contract."). This court consequently finds the <u>Giuliani</u> opinion's summary of North Carolina law on this issue to remain instructive and will adhere to its reasoning in this case.

Plaintiff has not alleged a contract between herself and FTCC expressly incorporating FTCC's policies and procedures as outlined in the Student Academic Planner and Handbook. Consequently, even taking reasonable inferences in Plaintiff's favor, the Complaint cannot be construed to allege the existence of a contract in this case. Plaintiff's breach of contract claim against Defendant Winebarger in his personal capacity will be dismissed.

## IV.  CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 6) is **GRANTED** as to all claims and that this case is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Motion for Expedited Ruling on Defendants' 12(b)(6) Motion to Dismiss (Doc. 15) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Set a Trial Date (Doc. 18) is **DENIED AS MOOT.**

A judgment in accordance with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 15th day of February, 2018.

_William L. Osteen, Jr._
United States District Judge